UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RENE S.,                                    :
       Plaintiff,                         :
                          :
       v.                                 :        C.A. No. 1:24-CV-322-MRD
                          :
FRANK BISIGNANO,                            :
Commissioner of the Social Security         :
Administration,                             :
       Defendant.                         :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      On June 30, 2021, Plaintiff Rene S., then fifty-one years old, filed her sixth application

for Supplemental Security Income ("SSI") under the Social Security Act.[1]  Tr. 17, 166.  Plaintiff

has a tenth-grade education and no work history since 2011, when she was employed making

pasta.  Tr. 415.  She alleges that she cannot work due to depression, anxiety and "OCD

[obsessive compulsive disorder] and ADHD [attention deficit with hyperactivity disorder]," as

well as panic attacks so severe that she cannot leave her home, with the onset of disability as of

March 4, 2021, soon after the denial of her fifth application.  Tr. 308-11, 358.  She relies on an

SSA consulting examiner's (Dr. Wendy Schwartz) cognitive testing results from 2017, in

connection with a prior application, to argue that she is cognitively limited by borderline

intellectual capacity.  See Tr. 412-20.  An administrative law judge ("ALJ") largely accepted her

arguments that she is severely mentally impaired and found that she suffers from an array of

severe mental impairments – depression, anxiety disorder, ADHD, borderline intellectual

---

[1] All five prior applications were denied.  Tr. 166, 175.  The first three sought not just SSI, but also disability insurance benefits; these applications were also denied.  Id.  While some medical evidence submitted in connection with the prior applications (particularly two opinions) was considered in connection with the current application, the prior applications were not reopened.  Tr. 17.  Plaintiff has not challenged this determination.

functioning and substance abuse disorder.  However, after considering opinion evidence from treating, non-examining and consulting examination sources, including several opinions pertaining to Plaintiff's condition prior to the period in issue, the ALJ determined that Plaintiff retains the RFC[2] to perform work involving simple, routine, repetitive tasks, in a work environment involving only simple work-related decisions, with only occasional changes in work setting, no rate or pace work, no work in close tandem with other workers, no more than occasional contact with the public and no more than frequent but superficial interactions with coworkers.  Tr. 21-22.  In reliance on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff was not disabled at any relevant time.

Now before the Court is Plaintiff's motion to reverse the decision of the Commissioner denying her SSI application.  ECF No. 10.  Focusing principally on the ALJ's treatment of opinion evidence, Plaintiff contends that (1) the ALJ erred in assigning little persuasive value to the mental health aspects of the 2020 and 2022 opinions signed by her treating primary care physician, Dr. Michael Poshkus; (2) the ALJ erred in his treatment of the findings of the non-examining psychologists – Dr. Albert Hamel and Dr. Brian Stahl – by failing to indicate whether he found them persuasive or supported; (3) the ALJ erred in assigning little persuasive value to the 2017 report of the consulting psychologist (Dr. Schwartz); and (4) the ALJ erred in finding only partially persuasive the opinion of the treating psychiatric nurse Cindy Johnson, who Plaintiff testified provided her with both psychiatric medical management and mental health counseling.  See Tr. 46-49, 58.  Plaintiff also challenges the ALJ's reliance on the VE who Plaintiff contends was "obtuse[]" and "obstruction[ist]" in responding to Plaintiff's attorney's

---

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

question about the impact of Plaintiff's limited ability to "appropriately interact with co-workers" on the availability of work.  ECF No. 10 at 14-16.

Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 14.  Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    <u>Standard of Review</u>

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); <u>see</u> <u>Purdy v. Berryhill</u>, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id.</u> (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  <u>Dickinson v. Zurko</u>, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in <u>Biestek</u>, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Irlanda Ortiz v. Sec'y of Health & Hum. Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  <u>Frustaglia v. Sec'y of Health & Hum. Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), <u>aff'd</u>, 230 F.3d 1347 (1st Cir. 2020) (per curiam); <u>see</u> <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir.

1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive. . . because the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." I.A. v. Comm'r of Soc. Sec. Admin., Civil Action No. 23-10170-FDS, 2024 WL 38746, at *4 (D. Mass. Jan. 3, 2024) (internal quotation marks and citation omitted), aff'd sub nom. Askew v. O'Malley, No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022). If the Court concludes that the ALJ erred, it is empowered to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1383(c)(3). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 416.920(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 416.920(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions and prior administrative medical findings by Social Security experts in the claimant's case record.  20 C.F.R. § 416.920c; see 20 C.F.R. § 416.913(b)(1) ("our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation").  The most important factors to be considered when the Commissioner evaluates the persuasiveness of these medical opinions are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 416.920c(b)(2); Katheryn H. v. King, C.A. No. 24-cv-253-JJM-LDA, 2025 WL 521137, at *3-4 (D.R.I. Feb. 18, 2025).  Supportability "includes an assessment

of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 416.920c(c)(1)-(5).  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

In considering whether and to what extent to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. Smith v. Colvin, No. 2:14-cv-429-JHR, 2015 WL 4391420, at *5 (D. Me. July 15, 2015). Nevertheless, if a portion of an expert opinion is rejected as less persuasive, the ALJ must state his reason, which must be based on substantial evidence of record.  See 20 C.F.R. § 416.920c(b). However, the ALJ's duty to "articulate how [he] considered the medical opinions and prior administrative medical findings" is not onerous.  20 C.F.R. § 404. 1520c(a); see Warnell v. O'Malley, 97 F. 4th 1050, 1053 (7th Cir. 2024).  In assessing the ALJ's articulation, the Court must remain mindful that its role is not to reweigh the evidence, even if it might have come to a different conclusion.  See Thomas P., 2022 WL 92651, at *8.

## III.    **Factual Background**

Plaintiff left school in the eleventh grade to work; she had no behavioral problems in school, was never held back and did not receive special education services.  Tr. 413.  Due to prior opioid abuse, she has long been treated with suboxone.  Tr. 414-15.  Plaintiff's work

6

history confirms that she last worked in 2011-2012, when she earned a total of $4,252.50. Tr. 295. In her function reports, Plaintiff reports that she has had no problems getting along with family, friends, neighbors and others, Tr. 331, 362, but inconsistently reports that she was (Tr. 332) and was not (Tr. 363) fired from her last job due to problems getting along with others, and she inconsistently reports that her condition does (Tr. 363) and does not (Tr. 332) affect her concentration. At the ALJ hearing, Plaintiff testified that she lost her last job because of panic attacks. Tr. 77.

In June 2016, with one of her prior disability applications pending, Plaintiff was referred by her treating psychiatrist to Dr. David Ahern for a neuropsychological evaluation of her level of cognitive functioning in connection with her disability case. Tr. 403. Despite Plaintiff's reports of poor sustained attention, Dr. Ahern noted that Plaintiff "did NOT meet developmental criteria for ADHD and performed well on measures of sustained attention; as such an ADHD diagnosis was NOT appropriate." Id. (emphasis in original). Dr. Ahern noted that Plaintiff had had a similar workup in 2013 and was then found to have "largely intact cognitive functioning"; ADHD was not diagnosed. Id. For the 2016 evaluation, Dr. Ahern performed cognitive testing but did not include the scores in his report "due to limits placed on the interpretation by poor performance on symptom validity measures," Tr. 406; rather than cognitive impairment, Dr. Ahern attributed Plaintiff's cognitive complaints to her sleep disorder and moderate depression, which she had been advised was likely worsened by her "medication regimen (e.g., very high dose Klonopin, Gabapentin[,] Suboxone) is likely worsening her subjective cognitive issues and that Adderall is being used to counteract this; almost like the meds are 'treating each other.'" Tr. 404-06. Dr. Ahern noted that her cognitive functioning otherwise was in the low average range or better and that her anxiety was mild. Tr. 406. In addition to depression, Dr. Ahern lists as

Plaintiff's "psychiatric history": "Anxiety disorder NOS [not otherwise specified] (r/o [rule out] panic disorder)," "r/o Borderline personality disorder" and "r/o ADHD." Tr. 405. His report notes complaints of "mood swings," but not any complaint of panic attacks. Tr. 404.

In November 2017, in connection with another prior disability application, Plaintiff was tested again, this time by an SSA consulting examiner, Dr. Schwartz. Tr. 412. Unlike Dr. Ahern, Dr. Schwartz found Plaintiff's testing effort to be adequate and opined to borderline intellectual functioning. Tr. 416, 419. Socially, Dr. Schwartz found Plaintiff to be friendly and cooperative, including that she visits a neighbor and family and has no history of problems with authority figures. Tr. 416. Apart from cognitive functioning limits, Dr. Schwartz's mental status examination ("MSE") findings were within normal limits with a history of depression but no agoraphobia, panic symptoms or PTSD symptoms, and only mild memory and concentration issues. Tr. 418. Dr. Schwartz opined to mental diagnoses of depression, anxiety, opioid dependance and borderline intellectual functioning, as well as functional limits based on mild concentration impairment and moderate-to-severe impact on ability to respond appropriately to work pressure and colleagues and supervisors, although Dr. Schwartz expressly noted her finding of no difficulties in dealing with coworkers or people in positions of authority. Tr. 419.

Pre-onset, prior to and continuing in 2019 and 2020, Plaintiff regularly (every two months) saw her Thundermist-based primary care physician, Dr. Poshkus. Tr. 450. The focus of his treatment was the ongoing management of substance disorders, including the suboxone prescription. E.g., Tr. 750 (appointment for follow up on medically assisted treatment with suboxone). For mental health treatment, Dr. Poshkus consistently noted that it was provided at CCAP by Nurse Johnson. E.g., Tr. 780. Dr. Poshkus's treating notes for this pre-onset period consistently reflect that Plaintiff "continues to do well," Tr. 422, 477, and "seems much more

controlled," Tr. 431, 466, with normal MSE findings including minimal depression and stable

mood. Tr. 422-77. Regarding her then pending disability application, these treating notes

expressly state that she "continues to follow closely [with] her psychiatrist" and that the

conditions treated in psychiatry are the basis for the alleged disability, as well as that Plaintiff

"reports that due to these conditions she is unable to work." Tr. 455 (emphasis supplied). In

May 2020, in connection with a prior application, Dr. Poshkus completed a "PHYSICAL

MEDICAL OPINION" in which he opined to no physical limits and "[d]efer[s] to psychiatry"

for mental health issues. Tr. 450. Without explaining the foundation for the opinion except for

his notation that Plaintiff is "[f]ollowed by psychiatry, admits unable to concentrate due to

anxiety/PTSD," Dr. Poshkus's 2020 opinion concludes that Plaintiff was then incapable of even

low stress work and that she would be off-task and absent at work-preclusive levels. Tr. 453.

Also throughout the pre-onset period in 2020 and into 2021, Plaintiff treated with Nurse

Johnson at CCAP, principally for anxiety, but also for depression that was generally mild and

occasionally moderate. Tr. 487-560. Nurse Johnson's treating notes record that "anxiety is still

problematic," with concerns about Plaintiff's drug seeking attempts to procure benzodiazepine-

based medication. Tr. 487. Nurse Johnson's MSE findings are limited ("no significant

change"), while those of one of her CCAP colleagues are mixed and include anxiety, labile affect

and racing ruminating thoughts. E.g., Tr. 489, 515, 521. In June 2020, Nurse Johnson noted an

increase in anxiety and panic attacks due to COVID, but by the next appointment, Nurse Johnson

noted that anxiety had improved on medication and that "she is no longer having panic attacks all

the time." Tr. 527, 534.

Soon after the alleged onset date (March 4, 2021), in June 2021, Plaintiff was

hospitalized for several days first at Rhode Island Hospital and then at Butler Hospital after she

was found unconscious with an empty container for Gabapentin nearby.  Tr. 564, 757, 762.

These records reflect some initial confusion as to the cause of the incident, but a suicide attempt

was quickly ruled out.[3]  Tr. 566 ("p[atient] stated that she did not ingest the gabapentin and this

was not a **<u>suicide</u>** attempt") (emphasis in original).  Ultimately, providers concluded it was an

unintentional overdose based on Plaintiff's statements that "she now believes this was a

benzodiazepine overdose," that she intentionally took a drug that she bought from a friend to

"'get high,'" that "her biggest issue is benzodiazepine use disorder," and that she also tested

positive for cocaine, which she admitted using (though infrequently).  Tr. 566, 570, 575, 577.

These notes reflect Plaintiff's son's opinion that "at baseline when she is clean/sober, she is a

'smart lady and a hard worker,'" as well as that he "does not agree with her going on disability as

'she doesn't do well with too much time on her hands.'"  Tr. 577.  Once she was stable, her

MSEs during this hospitalization contain no adverse findings.  Tr. 572, 584, 587, 596, 599, 603.

A psychiatric evaluation performed while Plaintiff was at Butler Hospital notes that one of

Plaintiff's "[p]rotective [f]actors" is her ability to "maintain relationships."  Tr. 925.  At

discharge, Plaintiff was advised to continue treatment with Thundermist and CCAP.  Tr. 577.

Post-onset, Plaintiff continued treatment with Dr. Poshkus after the overdose.  From June

2021 until May 2022, his notes reference diagnoses of anxiety and minimal depression treated at

CCAP and reflect that she was consistently doing well, with good eye contact and appropriate

mood and affect.  Tr. 750-62, 904-13; see, e.g., Tr. 755 ("she is doing very well and is followed

closely by psych," as well as that, "[h]er mood is bright"); Tr. 904 ("Psych- stable").  Dr.

Poshkus's observations of "doing well" persisted until the two appointments in July 2022 where

Plaintiff presented Dr. Poshkus with the disability opinion form.  Tr. 899-902.  Although Dr.

---

[3] The Court notes that Plaintiff's attorney argued to the ALJ that this was a suicide attempt.  Tr. 37.  This is clearly ruled out by the treating records and by Plaintiff's statements.

Poshkus's treating notes for these appointments include "taking meds w[ith] good effect," Tr. 902, that anxiety is "much more controlled," Tr. 902, and (at the July 13, 2022, appointment) "[p]sych- stable," Tr. 899, with "appropriate mood and affect," id., he also recorded "easily distracted" (at the July 6, 2022, appointment), as well as "persistent distractibility and periods of extreme anxiety." Tr. 901. He noted Plaintiff's report to him that, during her previous employment, she frequently had to take breaks and did not last for extended periods. Tr. 899-902. For "assessments," in addition to anxiety, at these two July 2022 appointments, Dr. Poshkus added two diagnoses that had never appeared in his treating notes:

- Panic disorder [episodic paroxysmal anxiety] without agoraphobia . . . Will refer to N. Shea whom she had seen previously.

- Attention deficit disorder ["ADD"] . . . Diagnosed previously by psychiatry.[4] Continues to be distracted easily during interview/discussion.

Tr. 902, see Tr. 899-900. He noted, "Patient seems to be most limited by her anxiety and concentration regarding successful employment," Tr. 900, although he prescribed no treatment for either of these new diagnoses. Tr. 899-902.

Following these July 2022 appointments, on August 3, 2022, Dr. Poshkus signed an opinion based on diagnoses of depression, ADD and panic disorder; his only clinical finding to support these diagnoses is "[e]asily distracted". Tr. 875. The Poshkus opinion features a list of "[s]eriously limited" mental abilities which he filled in with checks "[b]ased on reported prior work experience by patient." Tr. 876. He concludes the opinion with the finding that Plaintiff would miss more than four days per month of work. Tr. 877. For the next two appointments

---

[4] The Court was unable to ascertain what diagnosis Dr. Poshkus is referencing; neither Nurse Johnson's treating notes nor her opinion mentions a diagnosis of ADD or ADHD. The Ahern neuropsychological evaluation ruled out ADHD, Tr. 403, while the Schwartz report noted "able to maintain focus" with respect to concentration, Tr. 416. Plaintiff herself denied being affected by concentration issues when she completed the first function report in August 2021. Tr. 332.

after signing this opinion, Dr. Poshkus' treating notes continue to include the assessments of panic disorder and ADD "[d]iagnosed previously by psychiatry." Tr. 897-98, 890-91. After that, the treating notes revert to findings as found in his pre-opinion notes with no assessment of panic disorder or ADD. Tr. 884-85, 886 ("doing well," "appropriate mood and affect").

Post-onset, Plaintiff also continued treatment at CCAP with Nurse Johnson. At most of these appointments, Nurse Johnson noted Plaintiff was "doing much better," "doing well," "doing well most of the time" or "doing fairly well" with diagnoses of mostly "mild" depression and "mild anxiety." Tr. 802, 810, 812, 819, 827, 938, 948, 958, 970. At one appointment, Nurse Johnson noted a report of "panic attacks almost weekly," but by the next appointment, Nurse Johnson noted, "she has some anxiety at times and will have a panic attack but most of the time she is able to cope with her anxiety." Tr. 958. At the last appointment in the treating record, Nurse Johnson noted, "doing well with anxiety and most of the time it is controlled." Tr. 970. Nurse Johnson's treating notes do not reflect any observations of distractibility or a diagnosis of ADHD or ADD. See also Tr. 809-10 (patient record for CCAP reflects patient response "NOT AT ALL" to questions whether she had "trouble with concentration" or was "so restless that it is hard to sit still").

Nurse Johnson's medical opinion was signed soon after the last appointment on May 23, 2023. Tr. 918-21. In it, she recorded diagnoses of depression and opioid dependence (in remission) and noted that Plaintiff had been noncompliant with medical appointments and had attended only three times in the "last year" yet "mood and anxiety have improved," with "good" prognosis. Tr. 918. Nurse Johnson completed the same check-box list of mental abilities as appears on Dr. Poshkus's opinion form, but her findings are materially different from (and less limiting than) his. Tr. 919; see Tr. 876. That is, for all the categories he marked "seriously

limited," she recorded "satisfactory but limited," while for the two she checked as "seriously limited," he found them to be "unlimited or good" (accepting instructions and criticism from supervisors) and "limited but satisfactory" (dealing with normal work stress). <u>Compare</u> Tr. 919, <u>with</u> Tr. 876. Importantly, Nurse Johnson did not find that Plaintiff's conditions would cause her to be absent from work; she left that question on the form blank. Tr. 920.

**IV.    <u>Analysis and Recommendation</u>**

**A.    Plaintiff's Challenges to the Opinion Evidence**

Before digging into the meat of Plaintiff's opinion arguments – her challenge to the ALJ's rejection of Dr. Poshkus' opinion that Plaintiff is seriously mentally limited, including that she would be absent at a work-preclusive level – I first address Plaintiff's other opinion arguments, finding all of them without merit.

First, the Court may swiftly set aside Plaintiff's challenge to the ALJ's reliance on the findings of the non-examining psychologists – Dr. Hamel and Dr. Stahl – because he failed to articulate either a persuasiveness or supportability finding. This argument rests on an incorrect proposition. That is, the ALJ's decision expressly states that he found both of these experts' findings to be "generally persuasive," and to be well "supported by detailed explanations"; the decision couples this finding with a detailed discussion of the substantial evidence to which the ALJ refers. Tr. 24. There is no error.

Second, the Court need not linger long on Plaintiffs' argument that the ALJ erred in assigning "little persuasive value" to the 2017 report of the consulting psychologist, Dr. Schwartz. Tr. 24. As one reason, the ALJ noted (correctly) that the Schwartz report is based on an examination performed well prior to the period in issue in connection with an earlier unsuccessful disability application. <u>Id.</u> However, the ALJ did not stop with this reason; rather,

looking deeper, he performed a nuanced review of this report.  Importantly, he accepted Dr. Schwartz's cognitive test results, finding Plaintiff severely limited by borderline cognitive functioning, but appropriately discounted Dr. Schwartz's finding of moderate-to-severe limits in responding to work pressures, colleagues and supervisors.  For the latter finding, the ALJ relied on the inconsistency of this finding with other portions of Dr. Schwartz's report, such as "no difficulty dealing with people in positions of authority or with coworkers," as well as that, during the examination, Dr. Schwartz found that Plaintiff related well ("friendly and cooperative") and had a normal MSE.  Tr. 416-19; see also Tr. 331, 362 (Plaintiff reports no problems getting along with others).  As further support for the finding of inconsistency, the ALJ marshaled substantial evidence from the record, including that anxiety was controlled, symptoms were mild, and mood, affect, memory and concentration were generally normal or intact while thought process was coherent.  Tr. 24.  The Court finds no error in the ALJ's approach to the Schwartz report.[5]

Third, Plaintiff challenges the ALJ's finding that the opinion of Nurse Johnson, who was the primary treating provider at CCAP providing psychiatric medical management, was partially persuasive.  Notably, most of Nurse Johnson's report is entirely consistent with the ALJ's RFC, in that Nurse Johnson noted that "mood and anxiety" were both improving with "good" prognosis despite Plaintiff's lack of compliance with treatment appointments, that Plaintiff's mental abilities for work were limited but mostly all "satisfactory," and that Plaintiff did not have a likelihood of absence from work due to her conditions.  Tr. 918-20.  Nurse Johnson noted serious limitations only as to Plaintiff's ability to respond to supervision and to deal with normal

---

[5] Effectively conceding that she has little basis to critique the ALJ's approach to the Schwartz report, Plaintiff contends that her attack is really on the ALJ's use of the phrase "little persuasive value" for an expert whose opinion on cognitive functioning was actually accepted – Plaintiff asks the Court to consider this as supportive of her attack on the ALJ's approach to the Poshkus opinions, as discussed infra n.7.

work stress; as to these, the ALJ found them inconsistent[6] with Nurse Johnson's treating notes for the period in issue, which generally reflect that Plaintiff was doing well with mild symptoms and with the ability to perform activities of daily living, as well as that anxiety was controlled. Plaintiff's argument – that the Johnson opinion was discounted due to the lack of contact between Nurse Johnson and Plaintiff – is based on a misunderstanding of the ALJ's reasons.  I find no error in the ALJ's approach to the Johnson opinion.

That brings the Court to Dr. Poshkus, the primary care physician.  As his notes and his 2020 opinion reflects ("sees Psychiatry Cindy Johnson . . . [d]efer to psychiatry"), Dr. Poshkus treated substance use disorder (monitoring suboxone usage) and other physical concerns but referred Plaintiff to CCAP for all mental health issues, yet he based his opinions on depression, anxiety, panic disorder and attention deficit, all mental disorders.  Thus, his opinions, including his extreme absenteeism opinion (which would rule out all work if found to be persuasive) are entirely based on impairments that Dr. Poshkus was not treating.  See Tr. 453.  Further, while the 2020 opinion was largely rejected, the ALJ accepted significant parts of the 2022 Poshkus opinion, while rejecting the absenteeism finding in favor of the non-examining experts' persuasive opinions that Plaintiff was capable of "maintain[ing] focus for 2-hour periods and perform[ing] simple and familiar work tasks over the course of an 8-hour day/40-hour week at a non-pressured pace."  Tr. 171, 180.  Specifically, the ALJ accepted and adopted an RFC that is consistent with Dr. Poshkus's opinion that Plaintiff has limited but satisfactory (not preclusive of work) abilities to remember and carry out short simple instructions, to maintain regular attendance, to make simple decisions, to get along with coworkers, to respond to changes in

---

[6] Notably, as to these two matters, Nurse Johnson's opinion is also squarely contradicted by the 2022 opinion signed by Dr. Poshkus.

routine and to deal with normal work stress, as well as "[v]ery [g]ood" ability to respond appropriately to supervisors.[7]  Compare Tr. 21-22, with Tr. 876.

Despite accepting parts of the Poshkus opinion, the ALJ found Dr. Poshkus's more extreme findings – serious limits in the abilities to maintain attention/pace/routine and to work in proximity to others and absenteeism more than four days a month – to have little persuasive value.  As to the opinion of seriously limited attention/distractibility (which Dr. Poshkus found was Plaintiff's most disabling symptom) and the inability to maintain pace without unreasonable rest periods, as well as the need for "special supervision," the ALJ focused on the lack of supportability, noting that Dr. Poshkus himself made clear that he based this part of the opinion not on clinical observations but rather on "reported prior work experience by patient."[8]  Tr. 25. The ALJ further found that these extreme opinions, together with the absenteeism portion of the opinion, are not consistent with the other record evidence or with Plaintiff's reported activities. Thus, for example, the ALJ found that these aspects of the Poshkus opinions clash with Nurse Johnson's finding that anxiety was well controlled and anxiety and depression were mild, with Dr. Poshkus's own consistent findings that Plaintiff was doing well with appropriate mood and affect and with the clinical observations of Lifespan providers that Plaintiff's "[a]ttention and concentration are good."  Tr. 599, 612; see Tr. 927, 935 (providers at Butler Hospital observe no

---

[7] I do not accept Plaintiff's argument that the ALJ classified both Dr. Schwartz and Dr. Poshkus as having "little persuasive value" yet accepted a part of the Schwartz report but "utterly reject[ed]" the Poshkus opinions.  ECF No. 10 at 10.  As noted, the ALJ did not "utterly reject" the Poshkus opinion; the RFC aligns with much of it.  See Tr. 21-22.

[8] Plaintiff focuses most of her argument on attacking this reason.  Thus, she contends that, because a psychologist/psychiatrist uses a clinical interview to make objective MSE observations as an objective diagnostic tool, this primary care physician's reliance on what Plaintiff "reported" to him about what happened at the jobs she held ten or more years earlier should have been accepted by the ALJ as a clinical interview.  The problem is that Dr. Poshkus' opinion is clear that he based this part of his opinion on what Plaintiff "reported."  See Machado v. Astrue, C.A. No. 09-045A, 2009 WL 3837226, at *11 (D.R.I. Nov. 13, 2009) (no error in rejection of treating source opinion based "almost exclusively on Plaintiff's reported history").  I find no error in the ALJ's approach.

issues with concentration).  Finding that the ALJ marshaled ample substantial evidence to support his rejection of certain parts of the Poshkus opinion, I find no error and do not recommend remand for further consideration of it.

**B.    Plaintiff's Colloquy with the VE**

Plaintiff argues that the ALJ erred in relying on the VE's testimony because the VE was "obtuse[]" and "obstruction[ist]" when Plaintiff's counsel asked a question about the impact of limited ability to "appropriately interact with co-workers" on the availability of work.  ECF No. 10 at 14-16.  Having carefully reviewed the relevant portion of the ALJ's hearing, I do not agree. It is clear that the VE was initially confused by the attorney's question because it was a follow-up on the ALJ's hypothetical, which had already included the limit of no more than "superficial" contact with coworkers, yet the attorney's question did not take that limitation into account.  Tr. 72-74.  After the question was clarified, with appropriate assistance from the ALJ, for which the attorney thanked the ALJ, the VE testified that the limitation in the attorney's question would preclude all work.  Tr. 74-75.  The Court finds nothing off-base in this exchange; specifically, I do not find that the VE was "stunning[ly]" "obtuse[]," gave testimony that was "skewed," or exhibited "bald deferen[ce] to the ALJ."  ECF No. 10 at 15-16.  I do not recommend remand on this basis.

**V.    <u>Conclusion</u>**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  <u>See</u> Fed. R. Civ. P.

72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 8, 2025